UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CAMP DRESSER & MCKEE INC.**                                **CIVIL ACTION**

**VERSUS**                                                    **NO. 10 - 2864**

**BENETECH, LLC, ET AL.**                                    **SECTION "C"(2)**

**ORDER AND REASONS[1]**

Before this Court is a Motion for Summary Judgment filed by Plaintiff, Camp Dresser & McKee Inc. ("Camp Dresser"). (Rec. Doc. 25). Having considered the memoranda of counsel, the record, and the applicable law, the Court DENIES the Motion for Summary Judgment for the following reasons.

**I. Background**

The background facts have previously been described by this Court in its order granting Camp Dresser's prior motion for summary judgment. (Rec. Doc. 24). Briefly, Defendant, Benetech, LLC ("Benetech") entered into a Teaming Agreement and two Subcontract Agreements with CDM Constructors, a wholly-owned subsidiary of Camp Dresser that is not a party to this lawsuit. *Id.* at 1. Subsequently, Benetech executed a Loan Agreement with CDM Constructors's parent corporation, Camp Dresser, wherein Camp Dresser provided a $160,000 loan to Benetech. *Id.* at 2. Benetech has allegedly failed to pay back the loan pursuant to the Loan Agreement. (Rec. Doc. 25-1 at 1). Camp Dresser filed this action to recover the amount due under the Loan Agreement. *Id.* at 9.

---

[1] Sami Aboulhosn, a second-year student at Tulane University Law School, and Sami Dudar, a third-year student at the University of Georgia School of Law, contributed to the research and preparation of this decision.

## II.  **Law and Analysis**

Summary judgment is proper when the record indicates that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

Camp Dresser argues that it is entitled to recovery because Benetech breached the terms of the Loan Agreement by failing to timely pay back the loan as stipulated in the Loan Agreement. (Rec. Doc. 25-1 at 5).  Benetech, on the other hand, calls into question the quality of the evidence Camp Dresser offers in support of summary judgment and further argues that there

is a disputed issue of material fact as to whether Benetech repaid the loan.  (Rec. Doc. 36-2 at 4).  Specifically, Benetech submits that it wired uncategorized payments to CDM totaling approximately $480,000, which should have more than covered CDM's work performed, leading Benetech to argue the Camp Dresser loan should have been paid off.  *Id*.

This Court finds that Camp Dresser has not carried its burden to prove the absence of a material fact as to Benetech's alleged failure to repay the loan.  First, Camp Dresser has provided no official business records evidencing Benetechs's payments or lack thereof to determine whether or not a breach of the Loan Agreement occurred, but merely sticks to the bare allegation that "Benetech has failed to make a single payment."  (Rec. Doc. 25-1 at 5).

Second, a genuine issue of material fact exists as to whether Benetech repaid the loan through its alleged uncategorized CDM payments.[2]  This Court has previously held that "Benetech did not have a reasonable expectation that the contracts involved the same corporation."  (Rec. Doc. 24 at 5).  However, this does not eliminate all doubt as to the method of payment, which is a material fact in alleging that Benetech breached its obligation to repay Camp Dresser and, contrary to Camp Dresser's argument, is separate from an allegation of fraud or mistake.  (Rec. Doc. 39-2 at 2).  Section 5 of the Loan Agreement, entitled "Repayment and Payments," states, in pertinent part:

> 5.1   The Borrower shall repay the Loan on the Termination Date. Notwithstanding this, the Borrower may repay any portion thereof, before the Termination Date.

---

[2] Although the amount is disputed, Camp Dresser concedes that Benetech paid CDM an amount in excess of the loan.  (Rec. Doc. 39-2 at 4).

> 5.2  Notwithstanding any provision to the contrary contained in this Agreement, Borrower shall be obligated to make payments under this Agreement as soon as payments from the U.S. Government on task orders number 1 and 2 awarded under Contract Number W912PB-09-D-0021 minus payments to the subcontractors and payments to Borrower without profit reach a positive cash flow. Payments to Lender shall be equal to the positive cash flow from such Contract. Borrower shall provide weekly statements to Lender concerning the cash flow on such Contract.

(Rec. Doc. 14-5 at 10).

While Article 5.1 states that payments are to be made to the Lender–unambiguously Camp Dresser–this pertains only to partial pre-payments when Benetech achieved a positive cash flow and is not alleged by Camp Dresser.  (Rec. Doc. 39-2 at 4).  Thus the operative provision in the Loan Agreement is Article 5.1, which simply states that the loan must be paid before the termination date without articulating how the loan is to be repaid.

Benetech has submitted telling evidence on this issue.  Specifically, Benetech offers a pre-litigation demand letter from Peter T. Bailey, Senior Vice President of CDM, as well as "the point man for both Camp Dresser [] and CDM [] with respect to (1) administration of the agreements which are subject to arbitration and (2) the separate Loan Agreement which he signed with authority from the parent company, Camp Dresser."  (Rec. Doc. 50-2 at 2).  In this letter, Bailey states that the Camp Dresser loan "is currently due to CDM . . . ."  (Rec. Doc. 47-3 at 5).  Absent evidence to the contrary, this suggests that CDM had some involvement in the repayment of the Camp Dresser loan and lends credence to Benetech's theory that by transferring uncategorized payments to CDM in excess of the value of the loan, Benetech was

also paying off the loan. As repayment evidently could have involved both Camp Dresser and CDM, there is a dispute as to whether the loan was repaid indirectly under the contract, thereby rendering this case unfit for summary judgment.

### III. Conclusion

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment, Rec. Doc. 25, is DENIED.

New Orleans, Louisiana, this 1st day of August, 2011.

                                            HELEN G. BERRIGAN
                                            UNITED STATES DISTRICT JUDGE